# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### MAY SESSION, 1999

FILED

September 20, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 01C01-9804-CC-00157** |
| Appellee, | ) | |
| | ) | |
| | ) | **MONTGOMERY COUNTY** |
| **VS.** | ) | |
| | ) | **HON. JOHN H. GASAWAY** |
| **ANDRA LAMAR DILLARD,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | **(Direct Appeal - Aggravated Robbery** |
| | ) | **& Aggravated Rape)** |

FOR THE APPELLANT:

MICHAEL R. JONES
19th District Public Defender
109 South Second St.
Clarksville, TN  37040

FOR THE APPELLEE:

PAUL G. SUMMERS
Attorney General & Reporter

MARVIN E. CLEMENTS, JR.
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN  37243

JOHN CARNEY
District Attorney General

HELEN O. YOUNG
Assistant District Attorney
204 Franklin St., Suite 200
Clarksville, TN  37040

OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# OPINION

The appellant, Andra L. Dillard, was charged in a multi-count indictment with four (4) counts of aggravated burglary, two (2) counts of aggravated kidnapping, two (2) counts of aggravated robbery, one (1) count of aggravated rape and one (1) count of theft of property over $1,000. He was convicted by a Montgomery County jury of one (1) count of theft of property over $1,000 as charged in Count Eleven of the indictment. In a separate trial, he was convicted of one (1) count of aggravated burglary, one (1) count of aggravated kidnapping and one (1) count of robbery under Counts One, Two and Three of the indictment. Subsequently, the appellant pled guilty to one (1) count of aggravated robbery and one (1) count of aggravated rape as charged in Counts Eight and Nine of the indictment. For all of his convictions, the trial court sentenced the appellant to an effective sentence of 41 years.

The appellant now brings this appeal, challenging his convictions for aggravated burglary in Count One, aggravated kidnapping in Count Two, robbery in Count Three and theft of property in Count Eleven of the indictment. Further, the appellant challenges his sentences for his convictions in Counts One, Two, Three, Eight, Nine and Eleven of the indictment. Specifically, he raises the following issues for our review:

> (1) whether the evidence is sufficient to sustain his conviction for theft of property over $1,000 in Count Eleven of the indictment;
>
> (2) whether there was sufficient corroboration of an accomplice's testimony to support the appellant's convictions for aggravated burglary, aggravated kidnapping and robbery in Counts One, Two and Three;
>
> (3) whether the appellant's convictions for aggravated kidnapping and robbery under Counts Two and Three violate due process under State v. Anthony, 817 S.W.2d 299 (Tenn. 1991);

(4) whether the trial court imposed excessive sentences for all his convictions; and

(5) whether the trial court erred in imposing consecutive sentences. After a thorough review of the record before this Court, we affirm the judgment of the trial court.


## FACTUAL BACKGROUND


### A.  Counts One, Two and Three

At approximately 2:00 a.m. on January 20, 1995, Janet Lynn Ruppel was sleeping in her home in Clarksville when she felt something hard pressing underneath her chin and something on her stomach.  She woke up and saw a man straddling her with a gun underneath her chin.  She screamed and asked the man to move.  The man forced her out of her bed and informed her that she "was to go with them."  He put a gun to her back and ushered her through the hallway.  They went into the dining area of Ruppel's home, and Ruppel saw a second man standing in the doorway to the kitchen.  The second man produced her ATM card and demanded that she leave her house with them.  Ruppel gave the men her ATM number in an attempt to get the men to leave without her; however, both men insisted that she leave with them.

At trial, Ruppel described the men.  She stated that the man who put a gun under her chin was a black male with very dark skin.  He was dressed in a black sweatshirt, black jeans, a black hat, a black jacket and black gloves.  He had a blue and white bandana covering his face. The man was approximately sixteen (16) or seventeen (17) years of age, approximately five feet, eight inches tall with a medium build.  Ruppel testified that he was carrying a silver semi-automatic

weapon. Ruppel described the other man as a black male with lighter skin than the other man. He was similarly dressed, except that a red and white bandana covered his face. He also had approximately the same height and build as the other man.

Ruppel and the two men left her house and got into her car. The man with the blue and white bandana drove, while the man with the red and white bandana sat in the backseat and held a gun on Ruppel. They drove to an ATM machine approximately four miles from Ruppel's home, and the man with the blue and white bandana ordered Ruppel out of the car. Ruppel withdrew $500 from the ATM machine, got back into the car and handed the money to the driver. They then drove back to Ruppel's home. When they returned, the men gave her back her car keys, threatened to kill her and her sixteen (16) month old daughter if she called the police and then left her house.

Jesus Weaver testified on behalf of the state at trial. He stated that he and the appellant planned to rob someone on the night of January 19. Weaver testified that in the early morning hours of January 20, he met the appellant at the appellant's home. They dressed alike in black gloves, jackets and hats, except that the appellant wore a blue bandana, and Weaver wore a red one. They walked around the appellant's neighborhood until they spotted a house to rob. They saw a purse sitting inside of a car parked near the house. When they looked through the purse, they discovered keys. They attempted to open the front door of the house with the keys, but were unsuccessful. However, the keys opened the back door of the home.

The appellant walked inside of the home to search for money while Weaver stayed outside. When Weaver heard a woman scream, he went inside the house. He observed the appellant leading a woman into the room and asking her

-4-

for money. The woman gave the appellant her ATM card and her ATM number and pled with them to leave without her. However, because they feared that the woman would call the police, they forced the woman to leave with them.

When they got into the car, the appellant drove while Weaver stayed in the backseat with the victim. Weaver held a gun on the victim during the drive to the ATM machine. When they arrived at the ATM, the appellant directed the victim to withdraw money from her account. The victim obtained $500 and gave it to the appellant. They then drove the victim home, gave her the keys and went home.

Weaver testified that he received $220 from the robbery, and the appellant received $260. The appellant told Weaver that he deserved more money than Weaver because he "did more."

At trial, Ruppel testified that the appellant's complexion matched that of the man in the blue and white bandana. She further stated that, even though she never saw the man's face, the appellant's height and build were the same as that of the man in the blue and white bandana.

The jury returned guilty verdicts for aggravated burglary as charged in Count One and aggravated kidnapping as charged in Count Two. In Count Three, the jury found the appellant guilty of the lesser included offense of robbery.[1]

### B. Counts Eight and Nine

With regard to Counts Eight and Nine, the stipulated facts were recited at the guilty plea proceedings as follows:

> [O]n February 5th, 1995, the [appellant] entered the home on Kelsey Drive, here in Clarksville, of one Amy Herchig. She awoke to find him on top of her in her bed with a pistol to her head, . . . . The [appellant] then choked the victim until she passed out and then raped her while she was, in fact, unconscious, . . . . When she

---

[1] The appellant was charged with aggravated robbery in Count Three.

came to, he forced her to drive to an ATM machine and withdraw three hundred dollars, which she took and then he released the victim.

The appellant was charged with alternative counts of aggravated burglary in Counts Five and Six, aggravated kidnapping in Count Seven, aggravated robbery in Count Eight and aggravated rape in Count Nine. In February 1998, the appellant pled guilty to aggravated robbery as charged in Count Eight and aggravated rape as charged in Count Nine. As part of the plea agreement, the state dismissed Counts Five, Six and Seven.

### C.  Count Eleven[2]

At approximately 1:00 a.m. on February 27, 1995, Michael Cresong noticed that his maroon 1991 Dodge automobile was missing.  He had parked his vehicle outside of his home in Clarksville the previous evening and left the keys in the car.  Cresong testified that the value of his car in February 1995 was approximately $5,500.  He stated that he had not given anyone permission to take the car.

In the early morning hours of February 28, 1995, Officer Joel T. Bach was on patrol for the Berry Hill Police Department when he observed a late model maroon Dodge parked on Berry Hill Drive in Nashville.  Upon checking the license plate number on the vehicle, Officer Bach was advised that the vehicle had been stolen.  Other officers arrived at the scene, and they discovered two (2) individuals sleeping inside the vehicle.  Those people were later identified as the appellant and Jesus Weaver.  Subsequently, the officers took the appellant and Weaver into custody. Upon searching the vehicle, the officers found clothes in a

---

[2] Count Four of the indictment did not involve the appellant, but charged co-defendants with aggravated robbery.  Count Ten of the indictment charged the appellant with aggravated burglary, but the state later dismissed such charge.

plastic bag in the trunk. In addition, the officers found $300 on Weaver's person, and the appellant claimed that $120 of the money belonged to him.

Jesus Weaver testified for the state at trial. He stated that on Sunday, February 26, he and the appellant "went out looking for a car" to steal. When they found a Dodge with the keys in the ignition, they took the car to Weaver's house and then to the appellant's house so that they could obtain some clothes. They drove to Nashville that night, parked the car in a residential neighborhood and went to sleep. The next day, they drove the car around Nashville and eventually parked the car and went to sleep. Subsequently, they were awakened by the police and taken into custody. Weaver testified that no one gave them permission to take the vehicle, and he and the appellant were planning to run away.

The jury found the appellant guilty of theft of property over the value of $1,000 as charged in Count Eleven of the indictment.

## SUFFICIENCY OF THE EVIDENCE

In his first issue, the appellant claims that the evidence is insufficient to sustain the jury's verdict of guilt for theft of property over $1,000. He claims that the evidence merely supports a conviction for the lesser included offense of joyriding because there is no evidence that he intended to deprive the owner of his property.

### A.

When an accused challenges the sufficiency of the evidence, this Court must review the record to determine if the evidence adduced during the trial was sufficient "to support the findings by the trier of fact of guilt beyond a reasonable

doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence or a combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence are resolved by the jury as the trier of fact. State v. Tuttle, 914 S.W.2d at 932.

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); State v. Grace, 493 S.W.2d at 476.

**B.**

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property

without the owner's effective consent." Tenn. Code Ann. § 39-14-103. To "deprive" means to:

> (A) Withhold property from the owner permanently or for such a period of time as to substantially diminish the value or enjoyment of the property to the owner;
>
> (B) Withhold property or cause it to be withheld for the purpose of restoring it only upon payment of a reward or other compensation; or
>
> (C) Dispose of property or use it or transfer any interest in it under circumstances that make its restoration unlikely.

Tenn. Code Ann. § 39-11-106(a)(8).

A person commits the offense of joyriding when that person "takes another's automobile, airplane, motorcycle, bicycle, boat or other vehicle without the consent of the owner and the person does not have the intent to deprive the owner thereof." Tenn. Code Ann. § 39-14-106.

## C.

The proof at trial showed that the appellant and Weaver took Michael Cresong's 1991 Dodge without his consent. They drove the car to their respective homes so that they could obtain clothing. They then drove to Nashville and remained there until they were apprehended by the police a day later. Weaver testified that he and the appellant had planned to "steal" a car and run away from home.

The appellant claims that the evidence merely supports a conviction for joyriding because he had no intent to deprive the owner of his property. However, the appellant's intent was a question of fact for the jury to determine. Defense counsel vigorously argued the joyriding theory to the jury, but the jury rejected this theory. This was clearly within the jury's province as the trier of fact. After reviewing the evidence presented at trial, we conclude that a rational trier

of fact could have found that the appellant "knowingly obtain[ed] or exercise[d] control" over Michael Cresong's vehicle without his consent and intended to withhold the vehicle from Cresong "permanently or for such a period of time as to substantially diminish the value or enjoyment of the property to the owner." Tenn. Code Ann. §§ 39-11-106(a)(8)(A), 39-14-103.

This issue is without merit.

## ACCOMPLICE TESTIMONY

In his next issue, the appellant contends that his convictions for aggravated burglary, aggravated kidnapping and robbery should be dismissed. He claims that these convictions were based solely upon the testimony of his accomplice, Jesus Weaver. He argues that because Weaver's testimony was not sufficiently corroborated, the trial court should have granted his motion for judgment of acquittal.

### A.

It is well-settled that a conviction may not be based solely upon the uncorroborated testimony of an accomplice. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994). However, Tennessee law requires only a modicum of evidence in order to sufficiently corroborate the testimony of an accomplice. State v. Copeland, 677 S.W.2d 471, 475 (Tenn. Crim. App. 1984). In State v. Griffis, 964 S.W.2d 577, 588-89 (Tenn. Crim. App. 1997), this Court stated:

> The rule of corroboration as applied and used in this State is that there must be some evidence independent of the testimony of the accomplice. The corroborating evidence must connect, or tend to connect the defendant with the commission of the crime charged; and, furthermore, the tendency of the corroborative evidence to connect the defendant must be independent of any testimony of the accomplice. The corroborative evidence must of its own force,

independently of the accomplice's testimony, tend to connect the defendant with the commission of the crime.

. . . .

The evidence corroborating the testimony of an accomplice may consist of direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. The quantum of evidence necessary to corroborate an accomplice's testimony is not required to be sufficient enough to support the accused's conviction independent of the accomplice's testimony nor is it required to extend to every portion of the accomplice's testimony. To the contrary, only slight circumstances are required to corroborate an accomplice's testimony. The corroborating evidence is sufficient if it connects the accused with the crime in question.

(Citations omitted); *see also* State v. Bigbee, 885 S.W.2d at 803.

This Court held that "if the corroborating evidence fairly and legitimately tends to connect the accused with the commission of the crime charged it satisfies the requirement of the rule on corroboration of an accomplice's testimony." State v. Copeland, 677 S.W.2d at 475. The issue of whether an accomplice's testimony has been sufficiently corroborated is a matter entrusted to the jury, as the trier of fact. State v. Bigbee, 885 S.W.2d at 803; State v. Maddox, 957 S.W.2d 547, 554 (Tenn. Crim. App. 1997).

**B.**

Jesus Weaver testified at trial that he and the appellant searched the appellant's neighborhood for a house. They were both dressed in black gloves, jackets and hats, except that the appellant wore a blue bandana, and Weaver wore a red one. Upon spotting Ruppel's house, they saw a purse sitting inside of a car parked near the house. They looked through the purse and discovered keys which opened the back door to the house.

The appellant walked inside of the home to search for money while Weaver stayed outside. Weaver heard a woman scream and walked inside where he observed the appellant leading a woman into the room and asking her for money.

-11-

The woman was not dressed at the time. The woman gave them her ATM card and number, but the appellant and Weaver forced her to leave her home with them.

They forced the victim into the car, and the appellant drove them to an ATM machine. Weaver stayed in the backseat with the victim while holding a gun. The victim withdrew $500 and gave the money to the appellant. They then drove the victim home, gave her the keys and went home.

Ruppel's description of the events on the night in question was quite similar to Weaver's. She testified that she was sleeping when she was awakened by the presence of something hard pressing underneath her chin and something on her stomach. When she opened her eyes, she saw a man straddling her with a gun underneath her chin. The man forced her out of her bed and informed her that she "was to go with them." He put a gun to her back and ushered her through the hallway. However, because she was undressed at the time, she begged the man to allow her to get dressed. The man refused, but retrieved a sweatshirt lying on the floor for her to wear. When they went into the dining area of Ruppel's home, she saw a second man standing in the doorway to the kitchen. The men forced her to leave her home with them, despite her attempts to have them leave without her.

Ruppel and the two men left her house and got into her car. The man with the blue and white bandana drove, while the man with the red and white bandana sat in the backseat and held a gun on Ruppel. They drove to an ATM machine approximately four miles from Ruppel's home, and Ruppel withdrew $500 from the ATM machine. She got back into the car and handed the money to the driver. They then drove back to Ruppel's home, and when they returned, the men gave her the car keys and left her house.

With regard to the appellant's identity, Ruppel described the man who woke her as a black male with very dark skin. He was dressed in all black, except that he had a blue and white bandana covering his face. The man was approximately sixteen (16) or seventeen (17) years of age, approximately five feet, eight inches tall with a medium build. At trial, Ruppel testified that the appellant's complexion matched that of the man in the blue and white bandana. She further stated that, even though she never saw the man's face, the appellant's height and build were the same as that of the man in the blue and white bandana.

The appellant asserts that Weaver's testimony was not sufficiently corroborated with regard to the appellant's identity. However, the corroboration need not be sufficient to support the conviction by itself and only slight corroboration is required. Moreover, whether an accomplice's testimony has been sufficiently corroborated is a question for the jury to determine. State v. Bigbee, 885 S.W.2d at 803; State v. Maddox, 957 S.W.2d at 554. By returning verdicts of guilty, the jury determined that Weaver's testimony had been sufficiently corroborated.[3] After reviewing the evidence presented at trial, we conclude that there was sufficient corroboration, through the testimony of Ms. Ruppell, of Weaver's testimony to sustain the appellant's convictions for aggravated burglary, aggravated kidnapping and robbery in Counts One, Two and Three.

This issue has no merit.

---

[3] Because the jury instructions were not included in the record before this Court on appeal, we assume that the jury was properly instructed with regard to corroboration of accomplice testimony.

## STATE V. ANTHONY

In his next issue, the appellant asserts that his convictions for robbery and aggravated kidnapping can not stand under principles of due process. He contends that the kidnapping was incidental to the robbery, and under State v. Anthony, 817 S.W.2d 299 (Tenn. 1991), his conviction for kidnapping should merge into his conviction for robbery.

In State v. Anthony, the Supreme Court addressed the issue of whether dual convictions of armed robbery and aggravated kidnapping arising out of the same criminal episode could constitutionally stand as a matter of due process. The Court held that when a kidnapping is "essentially incidental" to another offense, due process prohibits a conviction for kidnapping. Id. at 306-307. The test to be applied is whether, under the facts of each case, "the confinement, movement or detention is essentially incidental to the accompanying felony and is not, therefore, sufficient to support a separate conviction for kidnapping, or whether it is significant enough, in and of itself, to warrant independent prosecution and is, therefore, sufficient to support such a conviction." Id. at 306. The determination of whether the convictions for kidnapping and the related felony can stand should be based upon the facts of each case. The Anthony court noted that there is no prohibition against convictions for both offenses "simply because they arise out of the same episode." Id. at 307. A court should instead determine if there is a "substantially increased risk of harm over and above that necessarily present" in the linked felony. Id.

Subsequently, the Supreme Court released State v. Dixon, which clarified the holding in Anthony by stating:

-14-

> The Anthony decision should only prevent the injustice which would occur if a defendant could be convicted of kidnapping where the only restraint utilized was that necessary to complete the act of rape or robbery. Accordingly, any restraint in addition to that which is necessary to consummate rape or robbery may support a separate conviction for kidnapping.

957 S.W.2d 532, 534-35 (Tenn. 1997). The resolution of an Anthony issue is based upon two inquiries: (a) whether the "movement or confinement was beyond that necessary to consummate" the associated felony; and (b) "whether the additional movement or confinement: (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm." Id. at 535 (citing Anthony, 817 S.W.2d at 306). If both prongs are met, dual convictions for kidnapping and the additional felony do not violate due process. Id.

In the present case, it is clear that the movement of the victim from her home to the ATM was beyond that necessary to consummate the robbery. The appellant and Weaver broke into Ruppel's home intending to steal money. Instead of taking money or the ATM card from Ruppel at her home, they forced her at gunpoint into her car and drove approximately four miles so that Ruppel could withdraw money from her bank.

Furthermore, we also hold that the movement prevented the victim from summoning help. The victim could have easily summoned the police had Weaver and the appellant left without her. Indeed, Weaver testified that the appellant made the victim travel with them to the ATM because he "didn't trust her." Moreover, by forcing the victim at gunpoint into her car and driving to an ATM machine approximately four miles away, the perpetrators substantially increased the risk of danger to the victim.

-15-

The kidnapping of Ruppel was not "essentially incidental" to the robbery in this case. Therefore, under the principles enunciated in Anthony and Dixon, due process is not violated by the appellant's convictions for aggravated kidnapping and robbery.

This issue is without merit.


## SENTENCING


In his final issues, the appellant claims that the trial court erred in imposing his sentences. First, he argues that his sentences are excessive due to the trial court's erroneous application of enhancement factors. Secondly, he contends that the trial court erred in imposing consecutive sentences.

### A. Standard of Review

This Court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

The burden is upon the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d) Sentencing Commission Comments. In conducting our review, we are required, pursuant to Tenn. Code Ann. § 40-35-210, to consider the following factors in sentencing:

(1) [t]he evidence, if any, received at the trial and the sentencing hearing;

(2) [t]he presentence report;

(3) [t]he principles of sentencing and arguments as to sentencing alternatives;

(4) [t]he nature and characteristics of the criminal conduct involved;

(5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and

(6) [a]ny statement the defendant wishes to make in the defendant's own behalf about sentencing.

Under the 1989 Sentencing Act, the presumptive sentence is the minimum within the applicable range if no mitigating or enhancement factors for sentencing are present. Tenn. Code Ann. § 40-35-210(c); State v. Fletcher, 805 S.W.2d 785, 788 (Tenn. Crim. App. 1991). However, if such factors do exist, a trial court should start at the minimum sentence, enhance the minimum sentence within the range for enhancement factors and then reduce the sentence within the range for the mitigating factors. Tenn. Code Ann. § 40-35-210(e). No particular weight for each factor is prescribed by the statute, as the weight given to each factor is left to the discretion of the trial court as long as its findings are supported by the record. State v. Santiago, 914 S.W.2d 116, 125 (Tenn. Crim. App. 1995); see Tenn. Code Ann. § 40-35-210 Sentencing Commission Comments.

## B. Trial Court's Findings

### 1. Sentencing Hearing - October 10; Counts One, Two, Three and Eleven

On October 10, 1997, the trial court held a hearing to determine the appellant's sentences on Counts One, Two, Three and Eleven of the indictment. After hearing testimony, the trial court determined that the following mitigating factors would apply to all of the appellant's convictions: (1) that the appellant was

fifteen (15) at the time the offenses were committed, Tenn. Code Ann. § 40-35-113(6); (2) that the appellant had a troubled childhood, Tenn. Code Ann. § 40-35-113(13); (3) that the appellant has a learning disability, Tenn. Code Ann. § 40-35-113(13); and (4) that the appellant expressed remorse to law enforcement authorities during a police interrogation in connection with these offenses, Tenn. Code Ann. § 40-35-113(13).

With regard to Count One, aggravated burglary, the trial court found the following enhancement factors: (1) that the appellant was a leader in the commission of the offense, Tenn. Code Ann. § 40-35-114(2); (2) that the appellant had a previous history of unwillingness to comply with the conditions of a sentence involving release into the community, Tenn. Code Ann. § 40-35-114(8); (3) that the offense was committed with a deadly weapon, Tenn. Code Ann. § 40-35-114(9); and (4) that the offense was committed under circumstances under which the potential for bodily injury to a victim was great, Tenn. Code Ann. § 40-35-114(16). After weighing the mitigating factors and the enhancement factors, the trial court imposed a sentence of six (6) years for the Class C felony.

For the appellant's conviction for aggravated kidnapping, the trial court found as enhancement factors that (1) the appellant was a leader in the commission of the offense, Tenn. Code Ann. § 40-35-114(2); (2) the victim was treated with exceptional cruelty during the commission of the offense, Tenn. Code Ann. § 40-35-114(5); (3) the appellant had a previous unwillingness to comply with the conditions of a sentence involving release into the community, Tenn. Code Ann. § 40-35-114(8); and (4) the offense was committed under circumstances under which the potential for bodily injury to a victim was great,

Tenn. Code Ann. § 40-35-114(16). The trial court imposed the maximum sentence of twelve (12) years for the Class B felony.

The trial court found the following enhancement factors to be applicable to the appellant's conviction for robbery: (1) that the appellant was a leader in the commission of the offense, Tenn. Code Ann. § 40-35-114(2); (2) that the appellant had a previous unwillingness to comply with the conditions of a sentence involving release into the community, Tenn. Code Ann. § 40-35-114(8); and (3) that the offense was committed under circumstances under which the potential for bodily injury to a victim was great, Tenn. Code Ann. § 40-35-114(16). After balancing the enhancement and mitigating factors, the trial court determined that the appellant should receive a sentence of five (5) years for robbery, a Class C felony.

Regarding Count Eleven of the indictment, theft of property over $1,000, the trial court found only one enhancement factor to apply, that the appellant had a previous unwillingness to comply with the conditions of a sentence involving release into the community. Tenn. Code Ann. § 40-35-114(8). The trial court imposed a sentence of four (4) years for the Class D felony.

The trial court next determined whether the appellant should receive consecutive sentences. The trial court found that the appellant committed these offenses while he was on probation. *See* Tenn. Code Ann. § 40-35-115(b)(6). Therefore, the trial court determined that consecutive sentences would be appropriate in this case. The court ruled that Counts One and Two would run concurrently with one another, Count Three would run consecutively to Count Two and Count Eleven would run consecutively to Count Three. Accordingly, the appellant received an effective sentence of twenty-one (21) years for Counts One, Two, Three and Eleven.

-19-

## 2. Sentencing Hearing - March 27; Counts Eight and Nine

On March 27, 1998, the trial court held a sentencing hearing for the appellant's convictions for aggravated robbery and aggravated rape, Counts Eight and Nine of the indictment. For both convictions, the trial court found that the appellant's age should be considered as a mitigating factor. Tenn. Code Ann. § 40-35-113(6).

Under Count Eight, the trial court found as an enhancement factor that the appellant had a previous history of criminal convictions or behavior. Tenn. Code Ann. § 40-35-114(1). The trial court also found that the appellant had a previous unwillingness to comply with the conditions of a sentence involving release into the community and that the crime was committed under circumstances under which the potential for bodily injury to a victim was great. Tenn. Code Ann. § 40-35-114(8) and (16). After weighing the enhancement factors and the mitigating factor, the trial court imposed a sentence of ten (10) years for aggravated robbery, a Class B felony.

With regard to the appellant's conviction for aggravated rape, the trial court found the following applicable enhancement factors: (1) that the appellant had a previous criminal history, Tenn. Code Ann. § 40-35-114(1); (2) that the victim was particularly vulnerable because of physical disability, Tenn. Code Ann. § 40-35-114(4); (3) that the appellant had a previous unwillingness to comply with the conditions of a sentence involving release into the community, Tenn. Code Ann. § 40-35-114(8); and (4) that the appellant had no hesitation about committing a crime when the risk to human life was high, Tenn. Code Ann. § 40-35-114(10). The trial court, after considering the enhancement and mitigating factors, imposed a twenty (20) year sentence for aggravated rape, a Class A felony.

Although the sentences in Counts Eight and Nine were to run concurrently pursuant to the plea agreement, the trial court considered the propriety of running the sentences in Counts Eight and Nine consecutively to the sentences in Counts One, Two, Three and Eleven. With regard to consecutive sentencing, the trial court found that the appellant was an offender whose record of criminal activity was extensive and the appellant was a dangerous offender whose behavior indicates little or no regard for human life. Tenn. Code Ann. § 40-35-115(b)(2) and (4). Thus, the trial court concluded that consecutive sentences would be appropriate and ruled that the appellant's effective twenty (20) year sentence on Counts Eight and Nine would run consecutively to the appellant's effective twenty-one (21) year sentence on Counts One, Two, Three and Eleven. As a result, the appellant received a total effective sentence of forty-one (41) years.

### C. Excessive Sentences

The appellant contends that the trial court imposed excessive sentences by erroneously applying certain enhancement factors. Specifically, the appellant challenges the applicability of Tenn. Code Ann. § 40-35-114(2) to his convictions for aggravated burglary, aggravated kidnapping and robbery. He further claims that Tenn. Code Ann. § 40-35-114(8) is inapplicable to any of his convictions. In addition, the appellant contends that Tenn. Code Ann. § 40-35-114(1) is not applicable to his convictions for aggravated rape and aggravated robbery. Also, the appellant insists that Tenn. Code Ann. § 40-35-114(4) is inapplicable to his conviction for aggravated rape. He argues that Tenn. Code Ann. § 40-35-114(5) should not apply to his conviction for aggravated kidnapping. Finally, he asserts that Tenn. Code Ann. § 40-35-114(10) does not apply to his conviction for aggravated rape and Tenn. Code Ann. § 40-35-114(16) does not apply to his

convictions for aggravated burglary, aggravated kidnapping, robbery and aggravated robbery.

### 1. Prior Criminal History

The appellant challenges the applicability of Tenn. Code Ann. § 40-35-114(1) to his convictions for aggravated robbery and aggravated rape. He argues that the criminal behavior occurred after he committed the aggravated robbery and the aggravated rape and thus was not "previous" criminal behavior. However, the appellant acknowledges that present case law is unfavorable to his position. Indeed, this Court has held that "trial judges can consider criminal convictions or any other criminal behavior which occurred prior to the sentencing hearing as constituting a previous history of criminal convictions or criminal behavior, regardless of whether the convictions or behavior occurred before or after the criminal conduct under consideration." State v. Chad Douglas Poole, C.C.A. No. 02C01-9506-CC-00178, 1996 Tenn. Crim. App. LEXIS 58, at *3, Hardeman County (Tenn. Crim App. filed January 31, 1996, at Jackson), *aff'd* (decided on unrelated grounds), State v. Poole, 945 S.W.2d 93 (Tenn. 1997); *see also* State v. Terry Antonio Lawrence, C.C.A. No. 01C01-9603-CR-00122, 1997 Tenn. Crim. App. LEXIS 906, at *3, Davidson County (Tenn. Crim. App. filed September 19, 1997, at Nashville). When the appellant was sentenced for aggravated rape and aggravated robbery, he had been convicted of aggravated burglary, aggravated kidnapping, robbery and theft of property. Therefore, these convictions qualify as previous criminal convictions, and Tenn. Code Ann. § 40-35-114(1) was properly applied to the appellant's convictions for aggravated robbery and aggravated rape.

Furthermore, we note that the appellant had been adjudicated a delinquent for the offense of theft of property under the value of $500[4] in September 1994 and was on juvenile probation at the time the instant offenses were committed. The appellant's juvenile record is a sufficient basis for enhancement of the appellant's sentence under Tenn. Code Ann. § 40-35-114(1). State v. Adams, 864 S.W.2d 31, 34 (Tenn. 1993); State v. Crowe, 914 S.W.2d 933, 939 (Tenn. Crim. App. 1995).[5] Additionally, at the sentencing hearing on March 27, Jesus Weaver testified that he and the appellant had been involved in other criminal activity during the month of January 1995, including theft and numerous instances of burglary. This would also qualify as prior criminal behavior. Moreover, the presentence report reveals that the appellant admitted using alcohol and marijuana, which can also be considered criminal behavior under Tenn. Code Ann. § 40-35-114(1). Therefore, under this Court's *de novo* review, we conclude that Tenn. Code Ann. § 40-35-114(1) is applicable not only to the appellant's convictions for aggravated robbery and aggravated rape, but also to the appellant's convictions for aggravated burglary, aggravated kidnapping, robbery and theft of property.

### 2. Leader in the Offense

The appellant claims that the trial court erroneously applied Tenn. Code Ann. § 40-35-114(2) to his convictions for aggravated burglary, aggravated

---

[4] The presentence report indicates that the offense was theft over $1,000. However a review of the appellant's juvenile records indicates that the offense was theft of property under the value of $500.

[5] In 1995, the legislature amended Tenn. Code Ann. § 40-35-114 with the addition of enhancement factor (20), which allows for enhancement of a sentence if "the defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult." Tenn. Code Ann. § 40-35-114(20). This Court has held that, as a result of this amendment, "factor (20) became the exclusive factor for enhancing a sentence based on a defendant's juvenile record"; therefore, any juvenile adjudication which would not be a felony can not be considered in enhancement. State v. Brent Brown, C.C.A. No. 02C01-9710-CC-00419, 1998 Tenn. Crim. App. LEXIS 1112, at *3, Hardeman County (Tenn. Crim. App. filed October 26, 1998, at Jackson). However, the present offenses were committed before the effective date of this amendment on July 1, 1995. Accordingly, the appellant's juvenile record can be considered in enhancement under Tenn. Code Ann. § 40-35-114(1).

kidnapping and robbery. He argues that there is no evidence to suggest that the appellant was the leader, but merely shows that the appellant and Weaver participated equally in the offenses.

The proof at trial showed that the appellant initially went inside Ruppel's home. After finding Ruppel asleep in her bedroom, he placed a gun underneath her chin and forced her out of bed. He placed a gun to her back and led her down the hallway. The appellant and Weaver then forced the victim to leave her home, and the appellant drove the victim's car to an ATM machine. Ruppel testified that the driver of the car was the perpetrator who gave her instructions on what she was to do. Ruppel also testified that when she withdrew the money, she gave it to the driver. When Weaver and the appellant divided the money, the appellant took a larger portion, claiming "he did more so he deserved more."

We conclude that the trial court properly considered that the appellant was a leader in the commission of the offenses as an enhancement factor for the offenses of aggravated burglary, aggravated kidnapping and robbery. Tenn. Code Ann. § 40-35-114(2).

### 3. Vulnerability of the Victim

The appellant argues that the trial court erred in applying Tenn. Code Ann. § 40-35-114(4), that the victim was particularly vulnerable because of a physical disability, to his conviction for aggravated rape. The stipulated facts as recited during the guilty plea proceedings were that the appellant "choked the victim until she passed out and then raped her while she was, in fact, unconscious." We believe that the victim's unconscious state was a physical disability which rendered her incapable of resisting the rape as contemplated by the statute. See State v. Adams, 864 S.W.2d at 35 (holding that this factor "can be used in an aggravated rape case if the circumstances show that the victim, because of his

age or physical or mental condition, was in fact 'particularly vulnerable,' i.e., incapable of resisting, summoning help, or testifying against the perpetrator"); State v. Bobby Burns, C.C.A. No. 03C01-9406-CR-00208, 1995 Tenn. Crim. App. LEXIS 457, at *3, Blount County (Tenn. Crim. App. filed June 2, 1995, at Knoxville). The trial court properly applied this enhancement factor.

### 4. Exceptional Cruelty

The appellant next challenges the trial court's application of Tenn. Code Ann. § 40-35-114(5) to his conviction for aggravated kidnapping. The trial court applied this enhancement factor because the appellant and Weaver forced the victim to leave her home and would not allow her to check on her sixteen (16) month old daughter who was sleeping in the next room. The trial court recognized the "mental anguish" associated with the victim not knowing the safety or condition of her child. The trial court stressed that cruelty includes mental cruelty and found that the victim was subjected to mental cruelty by not knowing whether her child was safe. However, this Court has held that this enhancement factor is typically applied where the victim is subjected to physical abuse or torture. State v. Williams, 920 S.W.2d 247, 259 (Tenn. Crim. App. 1995). While this Court in no way wishes to diminish the victim's mental anguish by not knowing the condition of her daughter, we do not believe that this constitutes "exceptional cruelty" as contemplated by the statute. Therefore, the trial court improperly considered Tenn. Code Ann. § 40-35-114(5) as an enhancement factor for the appellant's conviction for aggravated kidnapping.

### 5. Previous History of Unwillingness to Comply

The appellant asserts that Tenn. Code Ann. § 40-35-114(8) was inapplicable to all of his convictions. He claims that the trial court applied this factor because he was on juvenile probation at the time the offenses were

committed, and this can not be the basis for the application of this factor. We agree. This Court has held that there must be a previous history of unwillingness to comply and has rejected the application of Tenn. Code Ann. § 40-35-114(8) merely because the defendant was on probation at the time the subject offense was committed. State v. Hayes, 899 S.W.2d 175, 186 (Tenn. Crim. App. 1995). Because there is no indication that the appellant previously failed to comply with a sentence involving release into the community other than by committing the present offenses, the trial court erroneously applied Tenn. Code Ann. § 40-35-114(8) to all of the appellant's convictions.

### 6. High Risk to Human Life

The appellant further contends that the trial court erred in applying Tenn. Code Ann. § 40-35-114(10), no hesitation about committing a crime when the risk to human life was high, to his conviction for aggravated rape. In State v. Jones, 883 S.W.2d 597, 603 (Tenn. 1994), the Supreme Court held that this enhancement factor is properly applied where the defendant demonstrates "a culpability distinct from and appreciably greater than that incident to the offense for which he was convicted." The victim testified at the sentencing hearing that the appellant choked her until she became unconscious and then raped her while she was in an unconscious state. Jesus Weaver testified that the appellant told him that he choked the victim "until she turned blue." In addition, the victim stated that the appellant employed a gun and a knife during the commission of the offense. We conclude that the appellant's actions demonstrate "a culpability distinct from and appreciably greater than" that which is incident to the crime of aggravated rape. The trial court properly applied this enhancement factor.

### 7. Great Potential for Bodily Injury to a Victim

Finally, the appellant contends that the trial court erred in applying Tenn. Code Ann. § 40-35-114(16) to his convictions for aggravated burglary, aggravated kidnapping, robbery and aggravated robbery. With regard to the appellant's convictions for aggravated burglary, aggravated kidnapping and aggravated robbery, we must agree. In State v. Smith, 891 S.W.2d 922, 930-31 (Tenn. Crim. App. 1994), this Court held that there is a great potential for bodily injury in every aggravated burglary and absent extraordinary circumstances, this factor may not be used to enhance a defendant's sentence for aggravated burglary. Similarly, this Court has determined that Tenn. Code Ann. § 40-35-114(16) is inherent in every aggravated robbery committed with a deadly weapon. State v. Claybrooks, 910 S.W.2d 868, 872 (Tenn. Crim. App. 1994); State v. Randy Lee Carver, C.C.A. No. 03C01-9301-CR-00027, 1995 Tenn. Crim. App. LEXIS 11, at *6, Hamblen County (Tenn. Crim. App. filed January 9, 1995, at Knoxville). Moreover, Tenn. Code Ann. § 40-35-114(16) cannot be used as an enhancement factor for the offense of aggravated kidnapping as it is inherent in the offense. State v. Kern, 909 S.W.2d 5, 7-8 (Tenn. Crim. App. 1993). Therefore, the trial court improperly applied Tenn. Code Ann. § 40-35-114(16) to the appellant's convictions for aggravated burglary, aggravated kidnapping and aggravated robbery.

However, the trial court did not err in applying Tenn. Code Ann. § 40-35-114(16) to the appellant's conviction for robbery. Although the jury convicted the appellant of the lesser included offense of robbery, the trial court found that the appellant and Weaver were armed during the commission of the robbery. Clearly, there was a great potential for bodily injury to the victim during the commission of this offense. See State v. Lavender, 967 S.W.2d 803, 808 (Tenn.

1998). This enhancement factor was appropriately applied to the robbery conviction.

## 8. Conclusion

The trial court appropriately applied Tenn. Code Ann. § 40-35-114(1), (2), (4) and (10) as enhancement factors in this case. Furthermore, for the appellant's robbery conviction, Tenn. Code Ann. § 40-35-114(16) was applicable. The trial court misapplied enhancement factor (8) to all of the appellant's convictions. Tenn. Code Ann. § 40-35-114(5) is inapplicable to the appellant's aggravated kidnapping conviction, and Tenn. Code Ann. § 40-35-114(16) does not apply to appellant's convictions for aggravated burglary, aggravated kidnapping and aggravated robbery.

Although the trial court misapplied certain enhancement factors, the appellant is not necessarily entitled to a reduction in his sentences. State v. Lavender, 967 S.W.2d at 809. Under this Court's *de novo* review, we find that Tenn. Code Ann. § 40-35-114(1) applies to all of the appellant's convictions. This Court is authorized to consider any enhancing or mitigating factors supported by the record even if not relied upon by the trial court. *See* State v. Smith, 910 S.W.2d 457 (Tenn. Crim. App. 1995). The appellant's criminal history is entitled to great weight, especially in light of the quantity and magnitude of the crimes committed. Even though the trial court considered various mitigating factors, it is clear that the court afforded them little weight, if any.[6] It is within the trial court's discretion to determine the weight afforded enhancement and mitigating

---

[6] We find it questionable whether two of these mitigating factors should apply in this case. First, although the appellant was fifteen (15) at the time of the offenses, there is no evidence in the record that he lacked substantial judgment because of his youth. Tenn. Code Ann. § 40-35-113(6). Moreover, the trial court considered the appellant's remorse during a police interrogation as a mitigating factor. However, the appellant's statements to law enforcement authorities were deemed involuntary by the trial court and were, therefore, suppressed at trial. This Court seriously doubts that the purposes of the Sentencing Act would be achieved by the consideration of an "involuntary" statement as a mitigating factor. *See* Tenn. Code Ann. § 40-35-113(13).

factors. State v. Santiago, 914 S.W.2d at 125. After a careful review of the record, we conclude that the trial court imposed appropriate sentences of six (6) years for aggravated burglary, twelve (12) years for aggravated kidnapping, five (5) years for robbery, ten (10) years for aggravated robbery, twenty (20) years for aggravated rape, and four (4) years for theft of property.

This issue is without merit.

### D. Consecutive Sentencing

In his final issue, the appellant challenges the trial court's imposition of consecutive sentences. Consecutive sentencing is governed by Tenn. Code Ann. § 40-35-115. A trial court may order sentences to run consecutively if it finds that one or more of the statutory criteria exists by a preponderance of the evidence. Tenn. Code Ann. § 40-35-115(b); State v. Black, 924 S.W.2d 912, 917 (Tenn. Crim. App. 1995). Additionally, a trial court must also find that an extended sentence is "necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences must reasonably relate to the severity of the offenses committed." State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995).

With regard to Counts One, Two, Three and Eleven, the trial court based consecutive sentencing on a finding that the appellant committed the offenses while he was on probation. Tenn. Code Ann. § 40-35-115(b)(6). The trial court further found that the appellant was a dangerous offender and an offender with an extensive record of criminal activity. Tenn. Code Ann. § 40-35-115(b)(2) and (4). Therefore, the court ordered that the appellant's sentences in Counts Eight and Nine would run consecutively to his sentences in Counts One, Two, Three and Eleven.

We agree with the trial court that the appellant is a dangerous offender "whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high."[7] Tenn. Code Ann. § 40-35-115(b)(4). The appellant was convicted of six (6) felonies, four (4) of which involve violence to another human being. The facts and circumstances surrounding these offenses clearly show the appellant's disregard for human life. The evidence showed that many of these crimes took place in the appellant's own neighborhood. The appellant and his accomplice preyed upon these innocent victims while they slept in their homes. Clearly, the appellant is an offender for whom incarceration is a priority. *See* Tenn. Code Ann. § 40-35-102(5). Furthermore, an extended sentence is "necessary to protect the public against further criminal conduct by the defendant" and the consecutive sentences are reasonably related "to the severity of the offenses committed." State v. Wilkerson, 905 S.W.2d at 939. We, therefore, conclude that the trial court properly imposed consecutive sentences in this case.

This issue has no merit.

## CONCLUSION

After thoroughly reviewing the record on appeal, we conclude that there is no reversible error. Accordingly, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE

---

[7] Because we find that consecutive sentences were appropriate under Tenn. Code Ann. § 40-35-115(b)(4), we need not address the appellant's contentions with regard to Tenn. Code Ann. § 40-35-115(b)(2) and (6).

CONCUR:

_____
DAVID G. HAYES, JUDGE


_____
NORMA MCGEE OGLE, JUDGE